## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIEKO McLAFFERTY, individually and on behalf of all other persons similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>DEUTSCHE LUFTHANSA A.G.; SOCIÉTÉ AIR FRANCE; KONINKLIJKE LUCHTVAART MAATSCHAPPIJ N.V.; and ALITALIA LINEE AEREE ITALIANE S.p.A.,<br><br>          Defendants. | Civil Action No. 08-1706 |

### MEMORANDUM

October 16, 2009                                                Pollak, J.

      Plaintiff Mieko McLafferty brought this putative class action on behalf of direct

purchasers of Europe-Japan passenger air travel for alleged price fixing in violation of the

Sherman Act against the defendants, Lufthansa, Air France, KLM, and Alitalia.

Defendants filed a motion pursuant to Rule 12(b)(6) to dismiss the plaintiff's First

Amended Complaint for failure to state a claim (Docket No. 56).  The plaintiff responded

(Docket No. 62) and defendants filed a reply brief (Docket No. 65).  I ordered further

briefing on the court's subject matter jurisdiction (Docket No. 76) to which the plaintiff

(Docket No. 78) and defendants (Docket No. 80) responded.  The issue of subject matter

jurisdiction and the motion to dismiss are ripe for disposition.

## I.  Background

Plaintiff Mieko McLafferty alleges that she purchased European-Japanese

passenger air transportation directly from one or more of the defendants.  Am. Compl. ¶

7.  The defendants are foreign airlines, Lufthansa, Air France, KLM, and Alitalia[1] that

provide European-Japanese air transportation and have sold these airline tickets within

the United States.  Am. Compl. ¶ 8-11.  Plaintiff alleges that the defendants conspired to

fix the price of European-Japanese passenger air transportation.  Am. Compl. ¶ 26.

Plaintiff contends that the conspiracy generally consisted of meeting in person to fix

prices, using electronic means to communicate about fixing prices, and monitoring cartel

members.  Am. Compl. ¶ 27.  Specifically, plaintiff alleges that the defendants met at the

Traffic Conference of the International Air Transport Association (IATA) in Geneva,

Switzerland from July 14-18 of 2003.  Am. Compl. ¶ 28.  Allegedly, at the Passenger

Tariff Conference's Steering Groups in July of 2003, the defendants agreed to impose

surcharges on passenger fares between Europe and Japan.  Am. Compl. ¶ 29.  Plaintiff

further alleges that there are related government investigations, including Lufthansa

participating in the Department of Justice's (DOJ) corporate leniency program for those

---

[1] The matter was stayed as to defendant Alitalia following the initiation of bankruptcy proceedings by Alitalia.  *See* Suggestion of Bankruptcy (Docket No. 55).

that voluntarily report illegal antitrust activity, Am. Compl. ¶ 38-40, a European

Commission investigation of the Defendants' conduct, Am. Compl. ¶ 41-45, and consent

agreements between Lufthansa and South Africa regarding price fixing.  Am. Compl. ¶

46.

       In the footnotes to their original brief, defendants noted their belief that subject

matter jurisdiction was lacking, but they appeared to perceive the issue as one that was

latent rather than requiring immediate attention, and they did not seek dismissal on that

ground.  Mem. Of Law in Support of Mot. to Dismiss the First Am. Compl. (Docket No.

56) at 18 n.10.  Cognizant that it is the duty of a federal court not to proceed without

assurance that the court has subject matter jurisdiction, *Huber v. Taylor*, 532 F.3d 237,

249 (3d Cir. 2008), acting *mea sponte*, I ordered briefing of the issue.  The question

addressed by the supplemental briefs was whether the Foreign Trade Antitrust

Improvement Act of 1982 excludes this case from the subject matter jurisdiction of the

federal courts.  On September 15, 2009, argument was heard on the issue of subject

matter jurisdiction and the motion to dismiss.

## II.  Discussion

       The defendants, in their court-ordered supplemental briefing, presented a facial

attack on the plaintiff's claim of subject matter jurisdiction.  A facial attack, as opposed to

a factual one, challenges the sufficiency of the pleadings, and the trial court must accept

the complaint's allegations as true.  *Taliaferro v. Darby Tp. Zoning Bd.*, 458 F.3d 181,

3.

188 (3d Cir. 2006).  Plaintiff, as the party invoking the court's jurisdiction, bears the

burden of establishing that jurisdiction exists.  *Common Cause of Pennsylvania v.*

*Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009).

The subject matter jurisdiction issue arises under the Foreign Trade Antitrust

Improvements Act of 1982 (FTAIA).  The FTAIA is an amendment to the Sherman Act

which somewhat inartfully states:

> Sections 1 to 7 of this title shall not apply to conduct involving trade or commerce
> (other than import trade or import commerce) with foreign nations unless--
>> (1) such conduct has a direct, substantial, and reasonably foreseeable effect--
>>> (A) on trade or commerce which is not trade or commerce with foreign
>>> nations, or on import trade or import commerce with foreign nations; or
>>> (B) on export trade or export commerce with foreign nations, of a
>>> person engaged in such trade or commerce in the United States; and
>> (2) such effect gives rise to a claim under the provisions of sections 1 to 7 of
>> this title, other than this section.
>
> If sections 1 to 7 of this title apply to such conduct only because of the operation
> of paragraph (1)(B), then sections 1 to 7 of this title shall apply to such conduct
> only for injury to export business in the United States.

15 U.S.C. § 6a.  The FTAIA limits the federal courts' subject matter jurisdiction.

*Turicentro, S.A. v. Am. Airlines*, 303 F.3d 293, 300 (3d Cir. 2002).

In a context such as the case at bar, involving alleged restraints on commerce,

other than import trade or import commerce, with foreign nations, the FTAIA requires

satisfaction of a two-step inquiry before a court can be assured that there is Sherman Act

subject matter jurisdiction.  *Turicentro*, 303 F.3d at 300-01.  First, the court must

determine if the conduct of the defendants was "trade or commerce (other than import

trade or import commerce) with foreign nations" under the introductory sentence of the

4.

FTAIA.  *Id.*  If the conduct does involve trade or commerce, other than import trade or import commerce, with foreign nations, a court does not have subject matter jurisdiction unless the defendants' conduct involves a "direct, substantial, and reasonably foreseeable" anticompetitive effect on United States commerce that would give rise to a Sherman Act claim.  *Id.* at 301.

A. *Does the Alleged Conduct Involve Trade or Commerce (Other than Import Trade or Import Commerce) With Foreign Nations?*

The first step in determining if foreign commerce is involved is, itself, a two-part inquiry.  First, it must be determined if defendants' conduct involves "trade or commerce with foreign nations," which includes "transactions between foreign and domestic commercial entities."  *Turicentro*, 303 F.3d at 302-03.  Next, if the conduct complained of does involve "trade or commerce with foreign nations," the court must determine whether the conduct was "import trade or import commerce," because import trade and import commerce are both excluded from the FTAIA's jurisdictional bar.  *Id*. at 302.

The conduct alleged in the First Amendment Complaint was trade or commerce with foreign nations under the first part of the first step of an FTAIA analysis.  In *Turicentro*, the Third Circuit defined "trade or commerce with foreign nations" as commerce between a foreign purchaser or seller and a domestic purchaser or seller or conduct "directed at the competitiveness of a foreign market."  *Id.* at 302.  Here, plaintiff's allegations arise from foreign airlines selling a ticket to a domestic purchaser

for foreign travel.  Such conduct involves "trade or commerce with foreign nations."

The next question is whether the purchase in the United States of wholly foreign air travel services involves "import commerce" under the second part of the first step of the FTAIA.  Lawsuits alleging anticompetitive conduct under the Sherman Act are not affected by the FTAIA, if they address anticompetitive conduct in "import trade or import commerce."  *Turicentro*, 303 F.3d at 302-03.  The FTAIA does not define "import," but the Third Circuit has noted the term "generally denotes a product (or perhaps a service) brought in from abroad."  *Id.*  The Third Circuit ruled in *Turicentro* that "[t]he dispositive inquiry is whether the conduct of the defendants, not plaintiffs, involves 'import trade or [import] commerce.'"  *Id.* at 303.

In *Turicentro*, a group of domestic airlines were alleged to have conspired to fix the commissions paid to travel agents in Latin America and the Caribbean.  *Id.* at 297.  The Third Circuit found that the defendants' conduct was not import commerce, despite the fact that payments were made from the United States to the foreign travel agents in United States dollars, because "[n]o items or services were brought into the United States by the payments alone."  *Id.* at 304.

Similarly in *Kruman v. Christie's International, PLC*, the Second Circuit addressed the question of whether a conspiracy between Christie's and Sotheby's to fix auction fees for auctions outside the United States was "import trade or import commerce" under the FTAIA.  *Kruman v. Christie's Int'l PLC*, 284 F.3d 384, 390-91 (2d

Cir. 2002) *abrogated on other grounds by F. Hoffman-La Roche LTD. v. Empagran S.A.*, 542 U.S. 155 (2004).  The court concluded that the defendants' conduct was not import commerce, even though there were purchasers within the United States who brought the goods into the United States.  *Kruman*, 284 F.3d at 395-96.  The court noted that "the object of the conspiracy was the price that the defendants charged for their auction services, not any import market for those goods."  *Id.* at 396.

The plaintiff argues that because the plaintiff was in the United States at the time the defendants sold her the tickets, the defendants imported ticket-selling services.  I find the plaintiff's characterization unavailing.  Under *Turicentro*, the relevant inquiry is focused on the conduct of the defendants.  The object of the alleged conspiracy was increasing surcharges for the movement of air passengers from Europe to Japan and *vice-versa*.  As in *Turicentro* and *Kruman*, the fact that payments emanated from the United States does not alone establish "import trade or import commerce" when such payments did not bring any goods or services to the United States.  A ticket to fly from Europe to Japan or Japan to Europe, even if purchased from and then delivered to the United States, does not properly qualify as an import or good, because the ticket has no value apart from the service it entitles its bearer.  *See TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc.*, 913 F.2d 676, 686-88 (9th Cir. 1990) (characterizing airline tickets as either licenses or contracts for purposes of evaluating restraints on alienation);  *In re Korean Air Lines Co. Ltd. Antitrust Litigation*, 07-MD-01891, at 6 (C.D. Ca. June 25, 2008) (unpublished

decision) ("A 'ticket' has no value to a customer separate and apart from air travel." (citing *Spirit Airlines, Inc. v. Nw. Airlines, Inc.*, 431 F.3d 917, 933 (6th Cir. 2005)).

I find that the purchase of passenger travel between Europe and Japan by a person physically present in the United States does not constitute "import trade or import commerce" under the FTAIA.  The service whose price the defendants allegedly fixed is only provided wholly outside the United States.  Thus, the court lacks subject matter jurisdiction unless the plaintiff can meet the "effects" exception to the FTAIA's jurisdictional bar.

B.  *Does the Alleged Conduct have a Direct, Substantial, and Reasonably Foreseeable Anticompetitive Effect on United States Commerce?*

When a Sherman Act claim involves "trade or commerce . . . with foreign nations" that is not "import trade or import commerce," subject matter jurisdiction is lacking unless the FTAIA's "effects" exception applies.[2]

The "effects" exception requires that the conduct have "'a direct, substantial, and reasonably foreseeable' anticompetitive effect on United States commerce, and that conduct 'gives rise' to a Sherman Act claim."  *Turicentro*, 303 F.3d at 304.  In determining whether the effect of the conduct is sufficiently direct, "[t]he geographic

---

[2] I do not have the benefit of the plaintiff's argument on this point, as the whole of the plaintiff's supplemental brief was devoted to arguing that the defendants' conduct is "import trade or import commerce."  Pl.'s Supplemental Mem. of Law Concerning Subject Matter Jurisdiction (Docket No. 78).

target of the alleged anticompetitive conduct matters greatly." *Id.* at 305.  The exception

does not include conduct that "adversely affect[s] only foreign markets." *F. Hoffmann-La*

*Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 161 (2004).  The text of the FTAIA,

although difficult to parse, limits the relevant effects to effects on the three different types

of commerce listed in sections (1)(A) and (1)(B) of the provision:  effects on "trade or

commerce which is not trade or commerce with foreign nations," 15 U.S.C. § 6a(1)(A),

effects on "import trade or import commerce with foreign nations," *id.*, and effects on

"export trade or export commerce with foreign nations, of a person engaged in such trade

or commerce in the United States." *Id.* at §6a(1)(B).

Nothing in the plaintiff's pleadings suggests that the conduct with which plaintiff

charges the defendants has a direct and substantial effect on domestic commerce, United

States import commerce, or United States export commerce.  The relevant allegations of

the complaint assert that a conspiracy hatched in Geneva by four foreign airlines

regarding passenger air travel between Europe and Japan resulted in higher prices paid by

domestic purchasers who bought tickets directly from the defendants.  First Am. Compl.

¶¶ 8-12, 18, 28-29, 47-49.  In evaluating the geographic target, as *Turicentro* dictates, it is

apparent that the conspiracy's target was Europe and Japan and passenger air travel

between the two.  The plaintiff's injury was, thus, in the market of Europe-Japan

passenger airfare.  As stated above, Europe-Japan air travel is foreign commerce that is

neither import trade nor import commerce. (And, *a fortiori* it is not export trade or

commerce.)  Therefore, an increase in the price of air travel between Europe and Japan does not fit within the statute's listed effects.  *See* 15 U.S.C. § 6a(1)(A) (requiring an effect "on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations").  The fact that the supra-competitive prices were paid by persons in the United States[3] does not establish, or even intimate, that the conspiracy directly affected United States commerce.

Because the alleged conduct involves non-import trade or commerce with foreign nations without a direct, substantial, and reasonably foreseeable anticompetitive effect on United States commerce, the FTAIA removes the case from the Sherman Act and this court's subject matter jurisdiction.  As the court lacks subject matter jurisdiction, I will not address the defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim.

### III.  Conclusion

For the reasons stated above this court lacks subject matter jurisdiction, and the complaint will be dismissed in its entirety as to all defendants.  An appropriate order accompanies this memorandum.

---

[3] This assumes that payments from putative class members did originate from the United States.  It is of course possible that a person present in the United States could have paid for a ticket with a foreign credit card or through a foreign bank account.  In such a circumstance, the exchange of money for a service would have occurred outside the United States in almost all respects, with the exception that in order to buy the ticket the purchaser would presumably have made a phone call, walked up to a ticket counter, or gone to a website while in the United States.